[Civ. No. 3655. Fourth Dist. July 21, 1948.]

CARL E. ERIKSON, Appellant, v. J. F. SULLIVAN, Respondent.

Arthur Vandersyde for Appellant.

George A. Malette for Respondent.

BARNARD, P. J.—The defendant owned what was known as the Golden Chariot Mine which was located in February, 1871, in an unsurveyed mountain area in San Diego County. The location notice described it as extending 100 feet on each side of a line running 500 feet northerly and 700 feet southerly from the discovery hole.

In October, 1940, the defendant leased this mine to the plaintiff with an option to purchase. This lease described the premises as Mining Lot No. 39 in the S. W. one-fourth of the N. E. one-fourth of a certain section 14, and known as the Golden Chariot Mine. In 1945, this description was changed to read Mining Lot 39 in the S. W. one-fourth of the S. E. one-fourth and the N. W. one-fourth of the S. E. one-fourth, of this section, and known as the Golden Chariot Mine.

Later, apparently in 1946, plaintiff brought this action to recover certain moneys advanced in connection with this lease and option. The defendant filed an answer and cross-com-

plaint for declaratory relief and unlawful detainer, alleging that the plaintiff had failed to comply with the lease agreement, that notice of cancellation had been given, and praying for restitution and possession of the premises, with certain damages. The plaintiff answered the cross-complaint denying that he had been given possession of all of the premises described in the lease, alleging that he had complied with the lease insofar as was possible, claiming that he was entitled to possession of the Golden Chariot claim, otherwise known as Lot 39, and praying that the cross-complainant take nothing. The plaintiff also filed an amended complaint alleging that the defendant had failed to deliver to him possession of any portion of the true location of the premises described in the lease, that he had paid certain delinquent taxes on the property, and praying for a declaration of his rights under the lease and option, for the amount of taxes paid, and for possession of the land described in the lease or in the alternative for damages. In an amended answer to the defendant's cross-complaint the plaintiff prayed that it be adjudged that he was not in default on this lease and option and that the defendant has failed to give him possession of the Golden Chariot Mine, known as Lot 39.

After a six-day trial the court found that the Golden Chariot Mine was located prior to 1874; that in May, 1874, the United States Surveyor General for California surveyed certain mining claims in this area and then made a map which was then known as a Mineral Survey Map; that this map showed the Golden Chariot Mine and Lot 39 as covering the same parcel and located said mine in what was later to be known as the N. W. one-fourth of the S. E. one-fourth of this section 14; that on December 31, 1874, the United States Government issued a patent to said mining claim to the defendant's predecessor, describing the land substantially the same as that described in this mineral survey map; that in 1881, the United States Surveyor General made another survey in this locality and issued another map designating the Golden Chariot Mine, also known as Lot 39, as being in the S. W. one-fourth of the S. E. one-fourth of this section; that extensive mining operations were conducted on this mine between 1874 and 1940; and that some time prior to 1940, the defendant acquired title and possession to the Golden Chariot Mine and prior to 1940 erected six concrete monuments designating the boundaries of this mine as shown by said mineral survey map.

It was then found that in October, 1940, the parties hereto entered into this lease and option; that they then understood that the Golden Chariot Mine, Lot 39 in said section, and the area bounded by the six concrete monuments all covered substantially the same parcel of land and that said parcel was in the N. W. one-fourth of the S. E. one-fourth of said section; that the lease erroneously described the claim as being in the S. W. one-fourth of the N. E. one-fourth of said section; that later, the parties agreed to correct this description in the manner in which it now appears in the lease; that the plaintiff took possession of said mining claim as described in said mineral survey map and as outlined by the six concrete monuments, and still continues in such possession; that neither the plaintiff nor the defendant at the time of entering into this lease believed that the boundaries of said Golden Chariot Mine or Lot 39 covered any area not included within the parcel outlined by the six cement monuments; that the plaintiff has paid certain delinquent taxes previously accrued, for which the defendant is indebted to him; that plaintiff has performed his agreements under the lease; and that the defendant's statement of alleged violations of the lease are untrue and he is not entitled to have the lease and option cancelled.

A judgment was entered which, as modified, awarded the plaintiff $528.90 in reimbursement for taxes paid, and adjudging that the lease and option is in full force and effect and that by reason thereof the plaintiff is entitled to continue in possession of the Golden Chariot Mine, also known as Lot 39, located in the N. W. one-fourth of the S. E. one-fourth of this section and being a parcel 1,200 feet long and 200 feet wide, the boundaries of which are indicated by six concrete monuments.

The plaintiff appealed from that portion of this judgment which adjudicates that the property covered by this lease and option is located in the N. W. one-fourth of the S. E. one-fourth of this section 14. He gave notice to the clerk to prepare a transcript of the judgment roll, together with a narrative statement to be thereafter settled. This narrative statement was never settled or filed. The defendant also filed notice of appeal from the entire judgment but made no request for a transcript, and his appeal was thereafter dismissed for lack of a record (*Erikson* v. *Sullivan*, 81 Cal.App. 2d 791 [185 P.2d 31].)

The plaintiff's appeal is now before us. As he states, "This appeal is taken upon the Judgment roll, solely upon the Clerk's Transcript and such marked Exhibits are shown upon their face to be official government maps and notes." The only record before us consists of the clerk's transcript and certain original exhibits which have been transferred, including the map prepared in 1881, as mentioned in the findings, and certain later maps including one showing a resurvey and approved by the United States Surveyor General's office in 1911. The mineral survey map made in 1874, referred to in the findings, while apparently introduced in evidence as defendant's "Exhibit Y," is not before us.

This claim was located in 1871 in mountainous territory which had not then been surveyed and it was described by giving various distances from the discovery hole. Extensive mining operations were carried on and there would seem little room for question as to where the claim was as it lay on the ground. Originally, the location with respect to government survey lines could not have been known. Apparently, some confusion still exists with respect to different surveys and it rather clearly appears that the actual and correct description, under subsequent surveys, was not known to the parties at the time the lease and option agreement was entered into. It was called Lot 39 when it was surveyed in 1874 but the map then made did not put in the section lines in that area, which was then described as too mountainous for that purpose. There is no question that the original claim was known as Lot 39 but there is a question where that lot would lie under a correct sectional survey. The court found that under a map prepared under a survey in 1874 it lies within the N. W. one-fourth of the S. E. one-fourth of this section, and this map is not before us. This appellant contends that the map made in 1881 is correct and shows that this mine actually lies in the S. W. one-fourth of the S. E. one-fourth of this section except for a very small portion which lies in the N. W. one-fourth of the S. E. one-fourth of this section. There seems to be no question that the claim as outlined by the concrete markers is situated in the N. W. one-fourth of the S. E. one-fourth of this section, and the appellant states in his brief that the respondent erected these monuments in 1922. The appellant's contention is not merely that the legal description of the property, as found by the court, is wrong but that he has since 1940 been in possession of the wrong property and that he is entitled, under the lease, to possession of an en-

tirely different parcel of ground, situated mainly in a different sectional subdivision.

It may be first observed that it cannot be certainly determined from the record before us that this land, patented as Lot 39, is in a different sectional subdivision than as found by the court, or that the description given in the lease after it was amended is actually a correct description of the land originally known as Lot 39. While some of the maps in evidence support the appellant's contention we have no way of knowing what other evidence was before the court.

The appellant argues that in amending the description in this lease and option the parties must have relied on and followed the description given in the map prepared in 1881 rather than on an earlier map, and that by consenting to this amended description the respondent must be held to have conceded that the land was located mainly in the S. W. one-fourth of the S. E. one-fourth of this section. Such record as is before us indicates that the parties did not know the correct description of the land at the time the lease was entered into, and the court clearly found that the parties understood at the time that the lease covered the area bounded by the six concrete markers, that neither then believed that the boundaries of the Golden Chariot Mine, or Lot 39, covered any land which was not included within the parcel outlined by these six markers, and that the plaintiff took possession of the land outlined by these markers and continued in possession of that property until the trial of the action. It must be assumed that these findings are supported by the evidence, and there is nothing to in any way indicate the contrary. It thus appears that the parties intended this lease to cover a certain parcel of land, there is no dispute as to where the parcel outlined by these six markers lies on the ground, and the appellant has been in possession thereof for years. Regardless of whether or not this is the correct legal description, or whether or not the court erred in finding that this piece of land lies in the N. W. one-fourth of the S. E. one-fourth of this section, the appellant is not prejudiced by any possible variance between the description as used by the court and what may be the correct description in accordance with the official surveys. Since the parties intended the lease to cover a particular area as it lies on the ground and since with that understanding the appellant took and held possession of that particular land, he cannot successfully maintain, upon the record before us,

that he was entitled to be given possession of an entirely different tract of land by the court.

The judgment is affirmed.

Marks, J., concurred.

A petition for a rehearing was denied August 12, 1948, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1948.